**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

S & S ENGINEERS, INC.,

                Plaintiff,

v.                                    CIVIL ACTION NO.   2:22-cv-00241

JUSTTECH, LLC,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant JustTech, LLC's Motion to Dismiss.   (ECF No. 7.)  For the reasons below, the motion is **DENIED**.

*I.*      *BACKGROUND*

On March 8, 2022, Plaintiff S & S Engineers, Inc. initiated this action by filing a complaint against Defendant JustTech, LLC in the Circuit Court of Kanawha County, West Virginia.   (ECF No. 1-2 at p. 4-9.)   According to the complaint, Plaintiff and Defendant entered a contract (the "Agreement") on or around April 15, 2021.   (*Id.* at 6, ¶ 10.)   Under the terms of the Agreement, Defendant agreed to "provide equipment, network and/or maintenance services."   (*Id.* at p. 19.)  This "cover[ed] the service required to keep" Plaintiff's "equipment and network in good operating condition."   (*Id.*)   The Agreement also included "Proactive Management & Support for Server" and "Computers" and a requirement that Defendant provide "Offsite Backup of Server."   (*Id.* at 18.)

On July 2, 2021, Defendant's servers were compromised by a malware attack. (ECF No. 1-2 at 6, ¶ 20.) This led to Plaintiff's servers being compromised as well, causing a loss of data and various hardware failures. (*Id.*) Plaintiff asserts that this server compromise hindered its business and led to its operations being "completely shut down for one and a half to two weeks." (*Id.* at 7, ¶ 26.) Additionally, Plaintiff claims that it "was forced to divert resources and personnel to recovering data and information" in response to the malware attack. (*Id.* at 7, ¶ 28.)

Based on these facts, Plaintiff brings two counts against Defendant, both involving breach of contract. First, Plaintiff alleges that Defendant breached its obligation to provide "Proactive Management & Support" by "fail[ing] to switch over" Plaintiff's "computers to one server in the time frame outlined by JustTech." (ECF No. 1-2 at 6-7, ¶¶ 30-35.) Second, Plaintiff claims that Defendant breached the Agreement by failing "to Provide Offsite Backup to Server" and "instruct[ing] employees … to save all files to local desktop." (*Id.* at 7-8, ¶¶ 36-44.) Plaintiff contends that both alleged breaches caused it to "suffer[] damages" in the form of limited business and resource expenditure. (*Id.* at 7-8, ¶¶ 35, 44.) Because of these damages, Plaintiff seeks judgment against Defendant for monetary relief. (*Id.* at 8.)

Defendant removed the case to this Court on May 26, 2022, pursuant to 28 U.S.C. §§ 1332 and 1441(a)-(b). (ECF No. 1-2 at 1-5.) Defendant then filed its motion to dismiss under Rule 12(b)(6) on June 17, 2022. (ECF No. 7.) The motion seeks dismissal of Plaintiff's claims for three reasons: (1) Defendant did not have the duties Plaintiff alleges it breached, (2) the alleged breach did not cause damage to Plaintiff, and (3) the Agreement has a clause which Defendant purports protects it from liability in this case. (ECF No. 8 at 2.)

Plaintiff responded to Defendant's motion on July 1, 2022, (ECF No. 9), and Defendant filed its reply on July 8, 2022, (ECF No. 10).   Thus, the motion to dismiss is fully briefed and ripe for adjudication.

## II.     *LEGAL STANDARD*

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint.   Fed. R. Civ. P. 12(b)(6).   A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007).   A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.   In applying this standard, a court must utilize a two-pronged approach.   First, it must separate the legal conclusions in the complaint from the factual allegations.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.*   Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).   A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

3

## III.    DISCUSSION

Both parties make different assertions about what the Agreement entails and what duties it placed on Defendant.   Having reviewed the Agreement and the parties' interpretations, this Court concludes that the contract is ambiguous as to whose interpretation is proper.   Thus, the limits of motion to dismiss proceedings are dispositive as the Agreement's proper interpretation is a "disputed" "question of fact" that is "not susceptible of resolution under a motion to dismiss for failure to state a claim."   *Wolman v. Tose*, 467 F.2d 29, 34 (4th Cir. 1972) (citations omitted).

Nothing in Plaintiff's motion to dismiss sways this Court to think otherwise.   Plaintiff's argument centers on its assertion that the contract required Defendant to provide a backup server and integration of their local computers with that server.   (ECF No. 9 at 4-5.)   To support this position, Plaintiff relies primarily on two services Defendant is to provide under the contract: "Proactive Management & Support for Server" and "Computers" and "Offsite Backup of Server." (*Id.*)

On the other hand, Defendant argues it has no such duties.   Instead, it alleges that the "contract provides only for a mix of monthly-managed support services."   (ECF No. 8 at 2.) "[N]one of which"—it claims—"required [Defendant] to connect certain computers to a server or back up that server at any intervals."   (*Id.*)

Unfortunately, the Agreement itself fails to dispel these conflicting interpretations.   As Plaintiff notes, the "Monthly Network Management Services Plan" certainly does include "Proactive Management & Support for Server" and "Computers" as well as "Offsite Backup of Server."   (ECF No. 1-2 at 18.)   Despite this, neither of these duties is defined in virtually any detail.   The closest the Agreement comes to an explanation of their meaning is a term which says

the "Agreement covers the service required to keep the equipment and network in good operating condition."  (*Id.* at 19.)   Yet this same term also says that Defendants are not liable for "[d]amage or loss resulting from misuse or perils" in a variety of situations, including "any … cause external to the equipment."  (*Id.*)   Again, this phrase is not clearly defined—though "fire, theft, [and] water damage" are listed as examples.  (*Id.*)

Before moving to the effect of this ambiguity on Plaintiff's motion, the Court notes that the Agreement is governed by Maryland law.   Term and Condition 8b states that the "Agreement shall be governed by and construed according to the laws of the State of Maryland."  (ECF No. 1-2 at 19.)   Additionally, neither party disputes that Maryland law applies.   Therefore, the Agreement will be construed pursuant to Maryland's laws, to the extent that they do not conflict with federal law.  *See*, *e.g.*, *Reese v. Alea London Ltd.*, 332 Fed.Appx. 135, 138-39 (4th Cir. 2009) (applying state law of contract construction).

Applying Maryland law, this Court would first need to "ascertain and effectuate the intention of the contracting parties" before it could grant a motion to dismiss.  *Horlick v. Cap. Women's Care, LLC*, 896 F.Supp.2d 378, 394 (D. Md. 2011) (citations omitted).   This analysis begins with "the language of the contract itself" as it is "the primary source for determining the intention of the parties."  *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 674 A.2d 106, 142 (Md. 1996).   As noted previously though, the Agreement's language fails to evince a meaning to its terms and the parties' intention.   Even after considering the "character of the contract, its purpose, and the facts and circumstances of the parties at the time" the Agreement was entered, this Court is unable to determine whether Plaintiff's, Defendant's, or some other

5

reading of the Agreement is proper. *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (Md. 1985).

For example, the Agreement's provisions do describe a plan that includes "Offsite Backup of Server." (ECF No. 1-2 at 18.) The brief language leaves it unclear exactly what burden this duty actually places on Defendant. Nothing indicates whether this backup must be monthly, yearly, or at any other interval, but it seems plain enough by the text of the Agreement that it must be backed up *sometime*. Similar issues arise with Defendant's obligation to provide "Protective Management & Support for Server" and "Computers." (*Id.*) It is not clear—and the parties disagree over—whether this requirement encompasses a duty to prevent malware attacks like the one in this case. Along with these unclear terms, the Agreement also protects Defendant from liability for "any … cause external to the equipment." (*Id.* at 19.) Adding to the confusion, the listed examples—fire, theft, and water damage—fail to paint a clear picture of what Defendant is and is not actually liable for under the Agreement. These examples are just some of the provisions that lead to uncertainty in the Agreement.

Therefore, the Court is no more certain than the parties as to the meaning of the Agreement. Thus, the Agreement is fundamentally "not free from ambiguity" as to the meaning of the disputed provisions. *Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992). Additionally, both parties have alleged a reading of the Agreement that this Court believes "a reasonably prudent person" might reach. *Auction & Estate Representatives, Inc. v. Ashton*, 731 A.2d 441, 445 (Md. 1999) (citations omitted). For instance, it is not clear what services are actually included as part of "Protective Management & Support for Server" and "Computers" or "Offsite Backup of Server." (ECF No. 1-2 at 18.) As a result, the Agreement is "susceptible of

two reasonable interpretations." *World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992) (citation omitted).

This "creates a disputed factual issue" as to the meaning of the Agreement's terms. *Heroman v. Teaching Strategies, LLC*, No. 8:19-cv-2098-PWG, 2020 WL 6889259, at *4 (D. Md. 2020) (citations omitted). A question of fact like this "precludes dismissal on a motion for failure to state a claim." *Martin Marietta Corp.*, 991 F.2d at 97 (citation omitted). As such, this Court finds that the Agreement is "ambiguous," and Defendant's "motion to dismiss must be denied." *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F.Supp.3d 588, 600 (D. Md. 2014) (citation omitted).

## IV.    CONCLUSION

For these reasons, the Court **DENIES** the pending motion to dismiss. (ECF No. 7.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        October 26, 2022

_____

THOMAS E. JOHNSTON, CHIEF JUDGE